IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NIKAYLA SUSANNE RAMSEY, SEBASTIAN KESSAMER GILDER JR., and AERIAL KATRINA ALICE ADAMS,<br><br>Defendants. | CR 24-74-BLG-SPW-2<br><br>ORDER |

Defendant Nikayla Susanne Ramsey moves to dismiss the Indictment based on three claims: (1) a Fifth Amendment Due Process violation due to a three-year pre-indictment delay; (2) a Speedy Trial Act violation; and (3) a Sixth Amendment violation due to an almost 14-month post-indictment delay. (Docs. 76, 77, 90). The Government opposes the Motion. (Doc. 80).

The Motion is fully briefed and ripe for review. (*See* Docs. 76, 77, 80, 90). For the following reasons, the Court denies Ramsey's Motion.

I.  **Factual Background**

A Montana grand jury handed down a two-count Indictment on May 20, 2024, charging Nikayla Suzanne Ramsey and her codefendants with Conspiracy with Intent to Distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C.

1

§§ 841(a)(1) and 846, as well as Possession with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. 2 at 2). The Indictment includes a forfeiture allegation. (*Id.* at 3). The charges arise out of alleged criminal activity occurring between November 2020 and March 2021.

Ramsey resided in Georgia when Magistrate Judge Timothy Cavan issued a warrant for her arrest in May 2024. (Doc. 3; Doc. 77 at 2). She was arrested on October 24, 2024, and appeared before a magistrate judge in the Northern District of Georgia, after which she was granted release with conditions pending her arraignment in Montana. (Doc. 27). The same day, Rule 5 documents were transmitted from Georgia and filed by the Clerk of this Court. (*Id.*).

Almost six months passed until Ramsey's counsel, Juli Pierce, contacted Assistant United States Attorney Colin Rubich regarding the status of Ramsey's arraignment. (Doc. 77 at 3; Doc. 80 at 3). Mr. Rubich "immediately filed a motion to issue summons and arraignment date" on April 16, 2025. (Doc. 47; Doc. 80 at 3). Ramsey appeared for her arraignment on May 8, 2025, in front of Judge Cavan, after which the Court set trial for July 7, 2025. (Docs. 53, 60).

Since the original setting, the Court has granted defendant Aerial Adams's motion to continue and Ramsey's motion to continue. (Docs. 66, 67, 76, 87). The first continuance was granted on June 23, 2025, and the second on August 19, 2025. Trial is set for November 3, 2025.

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

The Court has determined Ramsey's motion is appropriate for pretrial resolution because it solely involves a question of law.

## III. Analysis

Ramsey argues under three distinct legal frameworks alleging that the Government's significant delay in prosecuting in her case warrants dismissal of her Indictment. The Court addresses her arguments in turn.

### A. *The Fifth Amendment's Due Process Clause*

Ramsey first asserts a due process violation for the approximate three-year delay between the alleged conduct and indictment. The Court finds no violation occurred.

In general, "[d]elay between commission of the crime and indictment is [] limited by the statute of limitations, but in some circumstances the Due Process Clause requires dismissal of an indictment brought within the limitations period." *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992). In Ramsey's case,

3

the Government filed the Indictment within the five-year limitations period. *See* 18 U.S.C. § 3282(a). Thus, to prove a Fifth Amendment Due Process violation, Ramsey must show that: (1) she suffered "actual, non-speculative prejudice from the delay," and (2) the delay, when weighed against the Government's reasons for it, "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998); *United States v. Sherlock*, 962 F.2d 13149, 1353 (9th Cir. 1992). "A showing of actual prejudice is required before the second prong will be considered." *Doe*, 149 F.3d at 948. "[T]he burden of showing actual prejudice is heavy and [] rarely met." *Id.*

Additionally, "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Pallan*, 571 F.2d 497, 500 (9th Cir. 1978). The court's task is to "determine only whether the actions complained of . . . violate those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Id.* (internal citations omitted). The difficulty of a court's task when evaluating the reasons for prosecutorial delay is enhanced by the various potential motivations for delaying the presentation of a case to the grand jury, "many of which are legitimate and salutary." *Id.* "[D]ue process does not prevent the prosecutor

from delaying submission to the grand jury in order to acquire additional probative evidence, but rather, due process prevents delays which result in unfair and unnecessary detriment to the defendant's ability to defend [her]self." *Id.* (internal citations omitted). Consequently, the defendant's proof of prejudice must be definite, not speculative. *Id.* at 501.

Here, Ramsey does not meet her burden under the prejudicial prong. As an initial matter, most of the prejudice Ramsey alleges occurred post-indictment and is not relevant to the pre-indictment Due Process analysis. Further, Ramsey's primary argument that the three-year delay was presumptively prejudicial has little merit when her proof of prejudice is speculative at best. (*See* Doc. 77 at 12). Though a three-year delay "can impair memories and cause witnesses to become unavailable," (*Id.*), Ramsey fails to demonstrate any definite loss incurred which meaningfully impaired her ability to her defend herself. *See Doe*, 149 F.3d at 948; *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985); *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001); *Huntley*, 976 F.2d at 1290.

According to the Government, Ramsey's case was part of a larger investigation into a drug trafficking organization. (Doc. 80 at 9). To avoid jeopardizing the investigation, the Government indicted later in time, but still within the statute of limitations. (*Id.*). Thus, the Government's legitimate reasons for delaying indictment in combination with the lack of actual evidence of prejudice is

insufficient to block the Government's prosecution on the basis of pre-indictment delay.

In light of the foregoing, the Court need not consider the second prong of the analysis because Ramsey failed to make a non-speculative demonstration that a three-year pre-indictment delay impaired her ability to meaningfully defend herself. *See Doe*, 149 F.3d at 948. The Court denies Ramsey's Motion for the alleged pre-indictment due process violation.

### B.   *The Speedy Trial Act*

Ramsey next alleges a Speedy Trial Act violation for the delay between post-indictment and trial. The Court concludes no violation occurred.

To "give effect to" and better define the confines of the Sixth Amendment right to a speedy trial, Congress enacted the Speedy Trial Act. *United States v. Olsen*, 995 F.3d 683, 686 (9th Cir. 2021). The Speedy Trial Act requires the Government to try the defendant within 70 days of the indictment's filing or the accused's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). The Act also "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). Consequently, the Act affords district courts "the necessary flexibility" by including "a long and detailed list of periods of delay that are excluded in computing

the time within which trial must start." *Id.* (citing 18 U.S.C. § 3161(h)).

Here, the parties agree the Court should consider three relevant dates to determine when the speedy trial clock began to run: (1) May 20, 2024 (the Indictment's filing date); (2) October 23, 2024 (Ramsey's initial appearance in Georgia); and (3) May 8, 2025 (Ramsey's arraignment in Montana). (Doc. 90 at 3; Doc. 80 at 10). The parties further agree that the 70-day time limit does not begin to run "prior to the defendant's initial appearance before a judicial officer *in the charging district.*" *United States v. Wilson*, 720 F.2d 608, 609 (9th Cir. 1983) (internal quotations omitted) (emphasis in original).

Thus, the Court agrees with the parties that the 70-day time limit started when Ramsey appeared before Judge Cavan in the District of Montana on May 8, 2025. *See id.* at 610 (holding that the 70-day time period began when the defendant first appeared before a judicial officer in the charging district). Accordingly, the Court's original trial setting for July 7, 2025—60 days from arraignment—fell within the 70-day deadline.[1]

However, Ramsey argues that "but for counsel inquiring about [her possible] arraignment date in Montana, a date may never have been set before a judicial officer in the 'charging district.'" (Doc. 90 at 5). The Government acknowledges it was

---

[1] The parties concede that all other continuances filed by the Defendants are excluded by the Speedy Trial Act. (Doc. 80 at 11–12; Doc. 90 at 3–4); *see* 18 U.S.C. §§ 3161(h)(1)(D), (h)(6).

7

prompted by Ramsey's counsel to file the motion to issue summons and set the arraignment date but suggests "some sort of administrative error occurred" that delayed the setting. (Doc. 77 at 3; Doc. 80 at 3). The record is unclear as to what exactly caused the arraignment's delay. Regardless, it is difficult to square Ramsey's argument with § 3161(c)(1)'s language, "which explicitly refers to a defendant's first appearance before 'a judicial officer of the court in which such charge is pending.'" *Wilson*, 720 F.2d at 609 (quoting 18 U.S.C. § 3161(c)(1)).

Therefore, the Court finds that the 70-day speedy trial clock did not begin to run until Ramsey appeared before Judge Cavan on May 8, 2025. Because trial was originally set within 70 days of Ramsey's arraignment, no Speedy Trial Act violation occurred. The Court denies Ramsey's Motion for the alleged Speedy Trial Act violation.

C.  *The Sixth Amendment*

Though the Speedy Trial Act was not violated, Ramsey maintains her right to a speedy trial under the Sixth Amendment. The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court identified four "factors which courts should assess in determining whether a particular defendant has been deprived of [her] right." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The factors include: "[l]ength of delay, the reason for the delay, the defendant's assertion of [her] right, and prejudice to the

defendant." *Id.* The Court reviews each factor in turn and finds Ramsey's speedy trial right was not violated.

### 1. Length of Delay

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Delay is measured from "the time of the indictment to the time of trial," *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989), and "[g]enerally, a delay of more than one year is presumptively prejudicial," *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

In this case, the Indictment was filed on May 20, 2024, and trial was originally set for July 7, 2025. The Government concedes that the almost 14-month delay meets the minimum threshold necessary for a judicial inquiry into a speedy trial violation. (Doc. 80 at 15 (noting the threshold is "barely" met)). Therefore, this presumption of prejudice triggers an inquiry into the other three factors.

### 2. Reason for the Delay

"The government has 'some obligation' to pursue a defendant and bring [her] to trial." *Mendoza*, 530 F.3d at 762–63 (quoting *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993)). If the government fulfills its obligation through reasonable diligence, then the defendant does not have a speedy trial claim. *Id.* at

9

763.

Any deliberate attempt to delay trial "in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 532. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

Here, the Government has partially fulfilled its obligation to bring Ramsey to trial, but not enough to tip the scales in its favor. As to the five-month delay between Ramsey's indictment and arrest, there is no evidence that Ramsey knew of the charges against her or was purposely avoiding apprehension. Ramsey suggests she was easily discoverable. For example, she served in the United States Army until her honorable discharge in September 2020. (Doc. 77 at 10). She was an enrolled student at Georgia State University from 2021–2025 and she has been a running back for an Atlanta women's professional football team since 2021. (*Id.* at 11). Ramsey has also served on Georgia's state probation since 2022. (*Id.*).

The Government attributes the five-month delay to the fact that the Defendants lived outside of Montana when the arrest warrants were issued, which required a national search. Law enforcement's efforts yielded Defendant Aerial Adams's arrest in June 2024 out of Arizona, and like Ramsey, law enforcement

arrested Defendant Sebastian Gilder in October 2024 in Arizona.

Despite how discoverable Ramsey might have been, there is nothing in the record to indicate the Government's inexcusable oversight or egregious failure to find and arrest Ramsey. *See Doggett v. United States*, 505 U.S. 647, 657 (1992). It is not uncommon for a national search to take five months or more to locate the accused.

As to the five-month delay between Ramsey's initial appearance and her arraignment, the Government submits it was "strange[] and more of a bureaucratic error" than purposeful delay. (Doc. 80 at 16–17). The Government acknowledges it did not notice the error when it occurred, but took immediate steps to correct the error once it realized the arraignment was not set. (*Id.*).

The Court does not condone prolonged delays in bringing an accused to trial. Though the record does not clearly show the exact reason for the arraignment's delay, the Court weighs this factor against the Government because it is the Government's ultimate responsibility to bring a defendant to trial. *See McNeely v. Blanas*, 336 F.3d 822, 829 (9th Cir. 2003) (Even "court backlog or prosecutorial neglect . . . are attributable to the [Government]."). The factor is less heavily weighted then it would have been if the Government deliberately attempted to delay trial to hamper the defense. Nevertheless, the error must rest with the Government. *See Barker*, 407 U.S. at 532.

### 3.     *Ramsey's Assertion of Her Right*

Next, the strength of the defendant's efforts to assert her right "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that [she] experiences." *Id.* at 531. "[T]he failure to assert the right will make it difficult for a defendant to prove that [she] was denied a speedy trial." *Id.*

Here, Ramsey asserted her right to a speedy trial on July 21, 2025—two weeks after the original trial setting. The Court weighs this factor in favor of the Government.

Ramsey has been represented by counsel since October 2024 (Doc. 27) and was free to assert her right after she was arraigned and the Court set her trial. She did not. Instead, Ramsey waited until after her codefendant filed for a continuance, which Ramsey understood would delay her trial as well. (Doc. 90 at 4). The Court presumes she did not object to the continuance because her codefendant's motion was unopposed. (Doc. 66). Therefore, the lack of Ramsey's opposition demonstrates some level of hesitancy to assert her right during a time she was free to assert it. Nothing in the record suggests the Government prevented Ramsey from filing the instant Motion. Accordingly, the Court weighs this factor against Ramsey.

### 4.     *Prejudice to Ramsey*

"The final factor is prejudice. The Supreme Court has recognized three forms

of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Mendoza*, 530 F.3d at 764 (internal quotation marks omitted) (quoting *Doggett*, 505 U.S. at 654). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant to adequately prepare [her] case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).

Here, the first form of prejudice is inapplicable because Ramsey has been on pretrial release since her initial appearance. Next, Ramsey represents that the pending charges have caused her anxiety. She is pursuing her Master of Social Work and fears that the charges might impact her ability to obtain her degree. (Doc. 77 at 12). The Government is sympathetic to Ramsey's anxiety but notes that she has not experienced anxiety any longer than "any defendant in a typical criminal case, including her codefendants." (Doc. 80 at 19).

Like the Government, the Court does not negate or dismiss Ramsey's anxiety and concerns pending her charges. However, Ramsey does not point to any specific effects of her anxiety causing prejudice during the 14-month delay—at least, no occurrence that outweighs a typical defendant's anxiety and concerns pending charges.

As to the last form of prejudice, Ramsey speculatively states that "the significant passage of time . . . can impair memories and cause witnesses to become unavailable." (Doc. 77 at 12). Though generally true, Ramsey fails to show that she incurred loss which impaired her ability to defend herself.

In response, the Government represents "[t]here is not [a] piece of evidence which is now unavailable because of [] delay." (Doc. 80 at 19). Ramsey was allegedly involved in three recorded controlled buys. The recordings and the witnesses remain available to both parties.

Accordingly, the Court finds the last factor weighs against Ramsey. Without proof of "specific prejudice to [her] defense," the Court concludes that the almost 14-month delay does not compromise the reliability of the trial, especially when evidence and witness testimony remain available for use at trial. *See Doggett*, 505 U.S. at 656.

### 5. Balancing the Barker Factors

After balancing the *Barker* factors, the Court concludes that Ramsey's Sixth Amendment speedy trial right was not violated. Though the almost 14-month delay was due in part to the Government's unintentional negligence in monitoring case progression, the Court ultimately finds that Ramsey did not suffer prejudice which would compromise the fairness of her trial. As a result, a dismissal of Ramsey's Indictment is not warranted.

## IV. Conclusion

IT IS SO ORDERED that Defendant Nikayla Susanne Ramsey's Motion to Dismiss (Doc. 76) is DENIED.

DATED this 29th day of September, 2025.

                                                   *Susan P. Watters*
                                                   SUSAN P. WATTERS
                                                   United States District Judge